IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:26-CV-351-D

| | | |
|---|---|---|
| CARLOS MYRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CAITLIN MARIE SMITH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On March 31, 2026, Carlos Myrick ("Myrick" or "plaintiff") filed a complaint against Caitlin Marie Smith ("Smith"), the City of Raleigh ("Raleigh"), Officer Brent Herbstreit ("Herbstreit"), and Officer John Heinrich ("Heinrich") (collectively, "defendants") in the Wake County Superior Court [D.E. 1-2]. Myrick asserts a malicious prosecution claim against all defendants, a violation of the Fourth Amendment of the United States Constitution under 42 U.S.C. § 1983 against Herbstreit, Heinrich, and Raleigh (collectively, "city defendants"), and a claim against the city defendants that N.C. Gen. Stat. § 14-277.3A is unconstitutional both facially and as applied to Myrick. See id. Myrick seeks compensatory and punitive damages. See id. at 6–7.

On April 24, 2026, Myrick sent summonses to the city defendants addressed to "The City of Raleigh, Raleigh Municipal Building, Floor 2, 222 West Hargett Street, Raleigh, NC 27601." [D.E. 1] ¶ 2. On May 22, 2026, the city defendants timely removed the action to this court based on federal question jurisdiction. See id. at 1–4.[1]

[1] Myrick never served Smith. See id. at ¶ 3. Thus, Smith's consent is not necessary for removal. See 28 U.S.C. § 1441(c).

On July 21, 2026, the city defendants moved to dismiss Myrick's complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted [D.E. 14], filed a memorandum in support [D.E. 17], and filed two declarations [D.E. 15, 16]. See Fed. R. Civ. P. 12(b)(1), (6). Additionally, Herbstreit and Heinrich moved to dismiss Myrick's complaint for improper service [D.E. 14], incorporating the city defendants' memorandum in support and declarations [D.E. 14, 15, 16, 17]. See Fed. R. Civ. P. 12(b)(5). On July 27, 2026, Myrick's attorney filed a notice of appearance [D.E. 18]. Myrick did not respond to the city defendants' motion to dismiss. As explained below, the court grants the city defendants' motion to dismiss.

I.

From June 17, 2021, until August 1, 2021, Herbstreit and Heinrich, both officers with the Raleigh Police Department (collectively, "RPD officers"), investigated Myrick for suspicion of stalking Smith. See Compl. [D.E. 1-2] ¶¶ 9, 12. Smith and Myrick lived in the same apartment complex. See id. at ¶ 13. Smith complained about Myrick's conduct for "several months." Id. at ¶ 8. Myrick admits that his conduct was "odd," but alleges that it was "clearly premised on a lawful purpose to be present in the complex where he lived." Id. at ¶ 13. Myrick asserts that his dismissed charges for communicating threats and assault on a female factored into the charging decision. See id. at ¶ 14.

On July 27, 2021, a Wake County Magistrate denied Heinrich's request for a misdemeanor stalking arrest warrant for Myrick due to a lack of probable cause. See id. at ¶ 18. One of the RPD officers contacted Myrick and told him to "stop talking to females at his apartment complex." Id. at ¶ 19. Myrick told the RPD officers that he was visiting a friend that lived next door to Smith. See id. at ¶ 15. On August 1, 2021, Wake County Magistrate J. M. Jackson found probable cause and issued a warrant to arrest Myrick for misdemeanor stalking. See [D.E. 1-4] 2.

On August 1, 2021, Herbstreit arrested Myrick pursuant to the warrant. See Compl. ¶¶ 4, 8. The warrant cited Myrick for repeatedly stalking Smith by "knocking on [her] apartment door, and on several occasions attempting to talk to the victim when no relationship is present," and following her "when walking her dog" or to her apartment and mailbox. Id. at ¶ 10. After the arrest, Myrick spent a night in jail. See id. at ¶ 8. After the charge, the apartment complex evicted Myrick and permitted Smith to terminate her lease. See id. at ¶ 21. Additionally, Myrick's employer terminated his employment. See id.

On August 3, 2021, Smith applied for a protective order against Myrick. See id. at ¶ 22. On August 20, 2021, a Wake County District Court Judge denied Smith's request, finding that Myrick had a legitimate purpose for his visits and that the Raleigh Police Department did not provide Myrick with actual notice to avoid Smith. See id. at ¶ 23.

At some point, a Wake County District Court Judge found Myrick guilty of misdemeanor stalking. See id. at ¶ 26; [D.E. 17] 5 n.6. Myrick appealed. On May 1, 2024, a jury found Myrick not guilty of misdemeanor stalking. See Compl. ¶ 28. While this charge was pending, Myrick alleges that he lost the ability to obtain gainful employment, housing, and meaningful companionship. See id. at ¶ 27.

On April 24, 2026, Myrick served summonses on the city defendants in the same envelope addressed to "The City of Raleigh, Raleigh Municipal Building, Floor 2, 222 West Hargett Street, Raleigh, NC 27601." [D.E. 1] ¶ 2. Myrick has not served Smith, Herbstreit, or Heinrich individually. See id. at ¶ 3.

II.

The city defendants move to dismiss Myrick's claims and argue: (1) governmental and public official immunity bars Myrick's malicious prosecution claim against the city defendants;

(2) Myrick did not properly serve the RPD officers in their individual capacity; (3) any claims against the officials in their official capacity are duplicative; and (4) Myrick failed to state a claim. See [D.E. 17] 4–19.

As for Myrick's malicious prosecution claim, Raleigh argues that it has not waived its government immunity from suit for state common-law tort claims arising out of government activities. See id. at 11–14. Additionally, the RPD officers have not waived their public-official immunity. See id. at 6–7. In opposition, Myrick contends that "Raleigh has waived immunity . . . [under] the North Carolina Tort Claims Act." Compl. ¶ 3.

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of Geo. Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005); Fed. R. Civ. P. 12(b)(1). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see, e.g., Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). When considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings without converting the [motion] to one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (citation omitted); see, e.g., Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

North Carolina law applies to several of Myrick's claims, which means this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See

Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). First, the court looks to opinions of the Supreme Court of North Carolina. See Plyler v. Cox, 145 F.4th 501, 511 (4th Cir. 2025); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (citation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks ex. rel. Feiock v. Feiock, 485 U.S. 624, 630 n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (citation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

North Carolina local governments "enjoy governmental immunity from state common-law tort claims [including malicious prosecution claims] arising out of their performance of governmental" functions. Evans v. Chalmers, 703 F.3d 636, 655 (4th Cir. 2012); see Doriety for Est. of Crenshaw v. Sletten, 109 F.4th 670, 674 (4th Cir. 2024); S. Power Co. v. Cleveland Cnty., 24 F.4th 258, 262 (4th Cir. 2022); AGI Assocs., LLC. v. City of Hickory, 773 F.3d 576, 578 (4th Cir. 2014); Est. of Graham v. Lambert, 385 N.C. 644, 651, 898 S.E.2d 888, 895 (2024). This immunity applies both to municipalities and their officers and employees sued in their official capacity. See Lambert, 385 N.C. at 646, 898 S.E.2d at 892; Fullwood v. Barnes, 250 N.C. App.

31, 37, 792 S.E.2d 545, 550 (2016). Providing "police services constitutes a governmental function protected by governmental immunity." Chalmers, 703 F.3d at 655.

A municipality can waive governmental immunity in three discrete ways: "(1) by entering into a valid contract; (2) by acting in a proprietary capacity; and (3) by purchasing liability insurance." S. Power Co., 24 F.4th at 263 (citation omitted). North Carolina law provides additional information about municipal waiver by insurance policy, sanctioning government immunity waivers through (1) the purchase of liability insurance, (2) participation in a local government risk pool, or (3) creating a self-funded reserve. See N.C. Gen. Stat. § 160A-485(a). Any waiver of government immunity through insurance purchase is circumscribed "to the extent specified in the [municipal] council's resolution." Id. A plaintiff bears the burden of pleading "facts that, if taken as true, are sufficient to establish a waiver of immunity." Lambert, 385 N.C. at 652, 898 S.E.2d at 896 (cleaned up). If the government "present[s] uncontroverted evidence that" it did not waive its immunity, then the court should dismiss any state common law tort claims. Sletten, 109 F.4th at 674.

Myrick pleads that "Raleigh has waived immunity . . . [under] the North Carolina Tort Claims Act." Compl. ¶ 3. Waiver under the North Carolina Torts Claim Act is a proprietary governmental action. See S. Power Co., 24 F.4th at 263. But waiver under the North Carolina Tort Claims Act is proprietary action by the State of North Carolina, not a city like Raleigh. See Lambert, 385 N.C. at 652, S.E.2d at 896 (describing how the State Tort Claims Act "partially waived the State's sovereign immunity" and how North Carolina law allows cities to likewise waive immunity by purchasing liability insurance.). Here, Myrick does not plausibly allege that Raleigh waived immunity. See Compl. ¶¶ 29–32.

In 1999, Raleigh adopted a resolution partially waiving government immunity for state common law torts. See [D.E. 16] ¶ 10, [D.E. 17] 13.[2] The waiver includes strict guidelines and requires the execution of a release of all claims signed by the plaintiff. See [D.E. 15] ¶ 6; [D.E. 16] ¶ 12. Raleigh does not waive its sovereign immunity unless a release is executed. See, e.g., Flood v. Crews, 260 N.C. App. 456, 816 S.E.2d 535, 2018 WL 3431753, at *7 (2018) (unpublished table opinion); Arrington v. Martinez, 215 N.C. App. 252, 260–64, 716 S.E.2d 410, 416–18 (2011). In both Flood and Arrington, the North Carolina Court of Appeals confirmed that Raleigh's limited waiver of sovereign immunity is not triggered when the plaintiff does not sign a release. See Flood, 2018 WL 3431753, at *7; Arrington, 215 N.C. App. at 263–64, 716 S.E.2d at 418. Myrick has never signed a release. See [D.E. 15] ¶ 8; [D.E. 16] ¶ 15. Thus, Myrick has not triggered Raleigh's waiver of government immunity, and the court dismisses Myrick's malicious prosecution claim against the city.

The RPD officers assert "public official immunity" against Myrick's malicious prosecution claim. See [D.E. 17] 6–7. In North Carolina, public official "immunity protects a defendant against individual liability so long as he lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption." Beard v. Town of Topsail Beach, No. 7:19-CV-97, 2021 WL 2638147, at *11 (E.D.N.C. June 25, 2021) (unpublished) (cleaned up). "Police officers engaged in performing their duties are public officials for the purposes of public official immunity." Bartley v. City of High Point, 272 N.C. App. 224, 227, 846 S.E.2d 750, 754 (2020), aff'd, 381 N.C. 287, 873 S.E.2d 525 (2022); see, e.g., Beard, 2021 WL 2638147, at *11–12. Therefore, a police officer

---

[2] A court may consider certain uncontested "evidence outside the pleadings without converting the [motion] to one for summary judgment." Stroube, 413 F.3d at 459 (citation omitted); see, e.g., Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R., 945 F.2d at 768.

is generally immune from suits unless the "challenged action was (1) outside the scope of his authority, (2) malicious, or (3) corrupt." Beard, 2021 WL 2638147, at *11 (cleaned up).

The RPD officers were acting within the scope of their authority by (1) investigating Smith's claims, (2) applying for an arrest warrant, and (3) arresting Myrick pursuant to the arrest warrant. See Beard, 2021 WL 2638147, at *11 (arresting a defendant is within the scope of a police officer's authority); cf. Bartley, 272 N.C. App. at 227–234, 846 S.E.2d at 754–758 (body slamming a citizen during an arrest while the officer is in plainclothes and in an unmarked vehicle is outside of the scope of an officer's authority).

Myrick does not plausibly allege that the RPD officers were malicious or corrupt. See Compl. ¶¶ 30–32. Merely repeating buzzwords does not defeat public official immunity. See Lambert, 385 N.C. at 652, 659, 898 S.E.2d at 896, 901 (a police officer is entitled to "governmental immunity to the same extent as his employer" and plaintiff "bears the burden of pleading facts that, if taken as true, are sufficient to establish a waiver of immunity.") (cleaned up). Myrick pleads no facts contesting public official immunity. Thus, public official immunity protects the RPD officers, and the court dismisses Myrick's malicious prosecution claim against the RPD officers.

III.

As for the RPD officer's motion to dismiss Myrick's complaint under Federal Rule of Civil Procedure 12(b)(5), the RPD officers argue the court should dismiss the complaint for insufficient service of process. See [D.E. 17] 9–10. A motion to dismiss under Rule 12(b)(5) challenges the sufficiency of the act of service of process. See Fed. R. Civ. P. 12(b)(5); Tebib v. Fountain, No. 5:25-CT-3035, 2026 WL 2323341, at *8–9 (E.D.N.C. Aug. 11, 2026) (unpublished); Morris-Wilkins v. Assurity Life Ins. Co., No. 5:24-CV-499, 2025 WL 1005050, at *1 (E.D.N.C. Apr. 3,

2025) (unpublished); Kennedy v. Rowe, No. 5:23-CV-264, 2024 WL 2703016, at *2 (E.D.N.C. May 24, 2024) (unpublished); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (4th ed. 2004). A typical Rule 12(b)(5) challenge alleges that the process was delivered by a person incapable of serving process (such as a party), to a person or entity incapable of receiving service (such as a minor), or that the service was delivered in an improper way (such as via first-class mail). See, e.g., Tebib, 2026 WL 2323341, at *8; Stokes v. JPMorgan Chase Bank, NA, No. 8:11-CV-2620, 2012 WL 527600, at *5–6 (D. Md. Feb. 16, 2012) (unpublished). Myrick bears the burden of establishing proper service of process. See Mylan Lab'ys, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993); Dalenko v. Stephens, 917 F. Supp. 2d 535, 542 (E.D.N.C. 2013).

Service rules ensure that a defendant receives due process and that the court has personal jurisdiction over a defendant. Service of process is not a mere formality, and courts should not overlook procedural deficiencies even if actual notice occurred. See, e.g., Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984); Tebib, 2026 WL 2323341, at *9; McDaniel v. Greyhound Lines, Inc., No. 3:08-CV-130, 2008 WL 2704774, at *4–5 (W.D.N.C. July 7, 2008) (unpublished); Shaver v. Cooleemee Volunteer Fire Dep't, No. 1:07-CV-175, 2008 WL 942560, at *2 (M.D.N.C. Apr. 7, 2008) (unpublished); Hoyle v. United Auto Workers Loc. Union 5285, 444 F. Supp. 2d 467, 474 (W.D.N.C. 2006).

When a plaintiff sues a defendant in both his individual and official capacities, the plaintiff must serve the summons on the defendant in both capacities. See Kennedy, 2024 WL 2703016, at *2; Washington v. Cedar Fair, L.P., No. 3:22-CV-244, 2023 WL 1456294, at *4 (W.D.N.C. Feb. 1, 2023) (unpublished); Buchanan v. JumpStart S.C., No. 1:21-CV-385, 2022 WL 443299, at *3 (D.S.C. Feb. 14, 2022) (unpublished); Allen v. Coffey, No. 5:20-CV-144, 2021 WL 3684247,

at *1–2 (E.D.N.C. Aug. 18, 2021), aff'd, No. 21-1934, 2022 WL 34152 (4th Cir. Jan. 4, 2022) (per curiam) (unpublished); see also Kernea v. City of Charlotte, No. 3:22-CV-659, 2023 WL 6410702, at *2–3 (W.D.N.C. Sept. 29, 2023) (unpublished). A "plaintiff may not serve a defendant in his individual capacity by leaving process at an individual defendant's place of business." Monroe v. Adams, 1:24-CV-770, 2026 WL 295693, at *2 (M.D.N.C. Feb. 4, 2026) (unpublished) (citation omitted); Kennedy, 2024 WL 2703016, at *2; see Washington, 2023 WL 1456294, at *4.

On April 24, 2026, Myrick attempted to serve the RPD officers at the Raleigh Municipal Building. See [D.E. 1] ¶ 2. Assuming without deciding that the Raleigh Municipal Building qualifies as the RPD officers' place of business, the April 24, 2026 attempt was not service on either officer in his individual capacity. See Monroe, 2026 WL 295693, at *2, Kennedy, 2024 WL 2703016, at *2; Washington, 2023 WL 1456294, at *4. Thus, Myrick has failed to serve either RPD officer in his individual capacity.

Where the plaintiff fails to comply with procedural requirements for proper process or service of process, a court may not exercise personal jurisdiction over the defendant. See Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999); Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998); Kennedy, 2024 WL 2703016, at *3; Adams v. GE Money Bank, No. 1:06-CV-227, 2007 WL 1847283, at *2–3 (M.D.N.C. June 25, 2007) (unpublished). Thus, this court lacks personal jurisdiction over the RPD officers in their individual capacity, and the court grants the RPD officers' motion to dismiss for improper service of process.

IV.

The city defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550

U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (cleaned up); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (citation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the

motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (citation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

A.

Under North Carolina law, to state a malicious prosecution claim, Myrick must plausibly allege that defendants "(1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff." Shaw v. Raleigh Police Dep't, 5:22-CV-476, 2023 WL 3910247, at *4 (E.D.N.C. June 8, 2023) (unpublished) (cleaned up); see Turner v. Thomas, 369 N.C. 419, 425, 794 S.E.2d 439, 444 (2016); N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc., 366 N.C. 505, 512, 742 S.E.2d 781, 786–87 (2013). "In a malicious prosecution claim, probable cause means the existence of such facts and circumstances, known to the defendant at the time, as would induce a reasonable man to commence a prosecution." Shaw, 2023 WL 3910247, at *4 (cleaned up); see Turner, 369 N.C. at 425, 794 S.E.2d at 444; Best v. Duke Univ., 337 N.C. 742, 750, 448 S.E.2d 506, 510 (1994); Cook v. Lanier, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966). That the criminal proceeding ultimately ended in Myrick's favor does not "automatically negate the existence of probable cause at the time prosecution was commenced" or establish malice. Turner, 369 N.C. at 425, 794 S.E.2d at 445.

City defendants assert that the RPD officers had probable cause for Myrick's arrest because they had an arrest warrant and because Myrick admitted that a North Carolina District Court convicted him of misdemeanor stalking. See [D.E. 17] 5–6; Compl. ¶ 26. Conviction in a North Carolina District Court "constitutes conclusive evidence of probable cause and can only be

rebutted by evidence that the conviction was procured by fraud or other unfair means." Hill v. Winn-Dixie Charlotte, Inc., 100 N.C. App. 518, 521, 397 S.E.2d 347, 349 (1990). Myrick makes no allegations that his conviction was procured by fraud or other unfair means. Instead, he makes conclusory allegations that the RPD officers lacked probable cause because "Myrick was found not guilty by a unanimous 12-person Wake County jury." Compl. ¶ 31.

The "subsequent acquittal of a defendant does not, as a matter of law, automatically negate the existence of probable cause at the time prosecution was commenced." Turner, 369 N.C. at 425, 794 S.E.2d at 445; see Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) ("[T]he mere fact that the suspect is later acquitted of the offense" is irrelevant to the probable cause associated with the "validity of the arrest."); Kelly v. Bencheck, 107 F.3d 866, 1997 WL 76041, at *2 (4th Cir. 1997) (per curiam) (unpublished table opinion); see also Ray v. North Carolina, 5:22-CV-379, 2024 WL 2870779, at *2 (E.D.N.C. May 10, 2024) (unpublished); Sowers v. City of Charlotte, 3:14-CV-523, 2015 WL 8491498, at *4 (W.D.N.C. Dec. 9, 2015) (unpublished); Frieson v. Gardner, 5:06-CT-69, 2008 WL 3051598, at *5 (E.D.N.C. Aug. 5, 2008) (unpublished); Wilkerson v. Hester, 114 F. Supp. 2d 446, 450–51 (W.D.N.C. 2000). Thus, the court rejects Myrick's argument.

As for Myrick's malicious prosecution claim against the RPD officers, "[a] plaintiff alleging malicious or intentional acts by a governmental official faces a high bar." Fox v. City of Greensboro, 279 N.C. App. 301, 316, 866 S.E.2d 270, 284 (2021). "[T]he malice element may be satisfied by a showing of either actual or implied malice." Kirschbaum v. McLaurin Parking Co., 188 N.C. App. 782, 789, 656 S.E.2d 683, 688 (2008) (citation omitted). "Malice requires that the defendant was motivated by personal spite and a desire for revenge or that the defendant acted with reckless and wanton disregard for the plaintiff's rights." Shaw, 2023 WL 3910247, at *5 (cleaned up).

As discussed, Myrick makes only conclusory allegations about the RPD officer's purported malicious intent. See Compl. ¶¶ 30–32. Myrick does not plausibly allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (cleaned up); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. Thus, Myrick fails to plausibly allege a malicious prosecution claim against the RPD officers under North Carolina law, and the court dismisses Myrick's malicious prosecution claim against the RPD officers.

B.

Myrick brings a section 1983 claim against the city defendants asserting that his August 1, 2021 arrest violated his rights under the Fourth Amendment of the United States Constitution as applied to the states via the Fourteenth Amendment of the United States Constitution. See Compl. ¶¶ 35–39. "To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must plausibly allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676–77; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–94 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see City of Escondido v. Emmons, 586 U.S. 38, 42–44 (2019) (per curiam); Kisela v. Hughes, 584 U.S. 100, 103–08 (2018) (per curiam); District of Columbia v. Wesby, 583 U.S. 48, 62–63 & n.7 (2018); Hernandez v. Mesa,

582 U.S. 548, 554 (2017); Ziglar v. Abbasi, 582 U.S. 120, 150–51 (2017); Camreta v. Greene, 563 U.S. 692, 707 (2011); Pearson v. Callahan, 555 U.S. 223, 236 (2009); King v. Riley, 76 F.4th 259, 264–68 (4th Cir. 2023); Sharpe v. Winterville Police Dep't, 59 F.4th 674, 682–84 (4th Cir. 2023); Burns-Fisher v. Romero-Lehrer, 57 F.4th 421, 424 (4th Cir. 2023); Tobey v. Jones, 706 F.3d 379, 385 (4th Cir. 2013). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Kisela, 584 U.S. at 104–05.

In analyzing qualified immunity, the court asks (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Pearson, 555 U.S. at 232 (cleaned up); see Wood v. Moss, 572 U.S. 744, 757 (2014); Knibbs v. Momphard, 30 F.4th 200, 214 (4th Cir. 2022); Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (cleaned up); see Rivas-Villegas v. Cortesluna, 595 U.S. 1, 4–5 (2021) (per curiam); King, 76 F.4th at 265; Sharpe, 59 F.4th at 682–84. Although a case need not be directly controlling, "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741; see Rivas-Villegas, 595 U.S. at 5; King, 76 F.4th at 266–68; Sharpe, 59 F.4th at 682–84.

To determine whether an official's conduct violates clearly established law, a court must first specifically define the right. See, e.g., City of Tahlequah v. Bond, 595 U.S. 9, 12–13 (2021) (per curiam). Then, based on that specifically defined right, the court must determine whether

existing precedent placed the statutory or constitutional question "beyond debate." Kisela, 584 U.S. at 104 (citation omitted). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Bond, 595 U.S. at 12 (quotation omitted); see Wesby, 583 U.S. at 63. An official is entitled to qualified immunity "unless existing precedent 'squarely governs' the specific facts at issue." Kisela, 584 U.S. at 104 (citation omitted); see Wesby, 583 U.S. at 63–66; Mullenix v. Luna, 577 U.S. 7, 13 (2015) (per curiam).

The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." Wesby, 583 U.S. at 66 n.8; see Kisela, 584 U.S. at 103–08; Taylor v. Barkes, 575 U.S. 822, 825–27 (2015) (per curiam); City & Cnty. of S.F. v. Sheehan, 575 U.S. 600, 613–14 (2015); Carroll v. Carman, 574 U.S. 13, 16–20 (2014) (per curiam). In the United States Court of Appeals for the Fourth Circuit, "existing precedent" includes precedent of the United States Supreme Court, the Fourth Circuit, and the highest court of the state in which the action arose. See Doe ex rel. Johnson, 597 F.3d at 176. It also includes "a consensus of persuasive authority from other jurisdictions." Sharpe, 59 F.4th at 683.

In Pearson, the Supreme Court held that the qualified-immunity analysis need not proceed in a particular sequence, and that "[t]he judges of the district courts and the courts of appeals [may] exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236; see King, 76 F.4th at 265. Qualified immunity shields a defendant if the answer to either prong is "no." See al-Kidd, 563 U.S. at 735; Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009).

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment also states that "no [w]arrants shall issue, but upon probable cause." Id. "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner" or in "objective good faith." Messerschmidt v. Millender, 565 U.S. 535, 546 (2012) (citation omitted). The court grants an exception where "it is obvious that no reasonably competent officer would have concluded that a warrant should [be] issue[d]." Id. at 547 (citation omitted). Typically, this scenario occurs when officers rely "on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Leon, 468 U.S. 897, 923 (1984) (cleaned up). A warrant also may be facially deficient if it fails "to particularize the place to be searched or the things to be seized." Id. A "magistrate is more qualified than the police officer to make a probable cause determination" and "where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable[.]" Messerschmidt, 565 U.S. at 547–48 (cleaned up). "[A]n arrest under a facially valid arrest warrant [] provides the probable cause finding." Clark v. Link, 855 F.2d 156, 166 (4th Cir. 1988). And "an arrest made pursuant to a facially valid arrest warrant does not present grounds for a Fourth Amendment claim." McLean v. Leonard, No. 5:14-CV-718, 2016 WL 4007585, at *4 (E.D.N.C. July 26, 2016) (unpublished) (cleaned up); see Portfield v. Lott, 156 F.3d 563, 568, 570 (4th Cir. 1998). Thus, officers relying on a facially valid warrant generally cannot be held liable for a Fourth Amendment violation under section 1983. See, e.g., Mitchell v. Aluisi, 872 F.2d 577, 579 (4th Cir. 1989); Barnett v. Florence Cnty., No. 4:23-294, 2026 WL 745634, at *5 (D.S.C. Mar. 17, 2026) (unpublished); Young v. Stuart, No.

7:23-CV-586, 2025 WL 2752382, at *13 (W.D. Va. Sept. 29, 2025) (unpublished); Hubbs v. City of Charlotte, No. 3:25-CV-69, 2025 WL 2608662, at *3 (W.D.N.C. Sept. 9, 2025) (unpublished); McLean, 2016 WL 4007585, at *4–5; James v. City of Chester, 852 F. Supp. 1288, 1293 (D.S.C. 1994).

On August 1, 2021, a Wake County Magistrate issued an arrest warrant for Myrick after determining that probable cause existed to believe that Myrick violated N.C. Gen. Stat. § 14-277.3A. See Compl. ¶ 8; [D.E. 1-4] 2. The RPD officers then arrested Myrick pursuant to the August 1, 2021 warrant. See Compl. ¶¶ 8, 37. The August 1, 2021 warrant described Myrick's repeated stalking on dates ranging from June 17, 2021, through August 1, 2021, and provided Myrick's address for the arrest. See [D.E. 1-4] 2. The RPD officers' reliance on the August 1, 2021 warrant was objectively reasonable because the magistrate found probable cause that Myrick stalked Smith and identified Myrick's address and identity. Myrick fails to plausibly allege that the RPD officers violated his Fourth Amendment rights by executing the August 1, 2021 warrant. See Pearson, 555 U.S. at 232–36; King, 76 F.4th at 265. Thus, qualified immunity shields the RPD officers from individual liability on Myrick's section 1983 claim against them, and the court dismisses Myrick's section 1983 claim against the RPD officers in their individual capacity. See al-Kidd, 563 U.S. at 735; Miller, 475 F.3d at 627; Bostic, 667 F. Supp. 2d at 605–06.

C.

As for Myrick's section 1983 claim against Raleigh and the RPD officers in their official capacity, suits against the RPD officers in their official capacity are, in essence, suits against Raleigh. See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Kentucky v. Graham, 473 U.S. 159, 165–66 (1985); Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004). Therefore, the court considers Myrick's official capacity claims to be claims against Raleigh alone.

To state a claim under section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Atkins, 487 U.S. at 48; see Philips, 572 F.3d at 180; N.C. All. for Retired Ams. v. Hirsch, 741 F. Supp. 3d 318, 334 (E.D.N.C. 2024). A section 1983 plaintiff also must plausibly allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676–77; Monell, 436 U.S. at 691–94; Wright, 766 F.2d at 850; Hirsch, 741 F. Supp. 3d at 334.

When a municipal entity is sued—directly or in an official-capacity suit—the plaintiff must plausibly allege that a "policy or custom" attributable to the municipal entity caused the violation of the plaintiff's federally protected rights. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403–05 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); Graham, 473 U.S. at 166; Monell, 436 U.S. at 690–94; King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014); Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999). "Monell's 'policy or custom' requirement applies in [section] 1983 cases irrespective of whether the relief sought is monetary or prospective." Los Angeles Cnty. v. Humphries, 562 U.S. 29, 39 (2010). There are four ways in which liability for a policy or custom may arise:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle, 326 F.3d at 471 (cleaned up).

A violation results from a municipal entity's policy or custom if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121–23 (1988). Even if a section 1983 plaintiff can identify the requisite final policymaking authority under state law, a municipality is not liable simply because a section 1983 plaintiff can "identify conduct attributable to the municipality." Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 524 (4th Cir. 2000). Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." Brown, 520 U.S. at 404 (cleaned up); see City of Canton v. Harris, 489 U.S. 378, 389–90 (1989); Riddick, 238 F.3d at 524. Thus, to avoid imposing respondeat superior liability on municipalities, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524; Carter, 164 F.3d at 218–19.

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) abrogated on other grounds by Short v. Hartman, 87 F.4th 593 (4th Cir. 2023), cert. denied, 144 S. Ct. 2631 (2024). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction. Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can show the requisite culpability, a section 1983 plaintiff also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404.

Myrick does not allege that the August 1, 2021 arrest was the result of any municipal custom or policy. See [D.E. 17] 16. Instead, Myricks contends that Raleigh, as the employer of the officers, should be liable for their unconstitutional torts. See Compl. ¶¶ 26, 36–37. In essence,

Myrick brings his claim under a respondeat superior theory, which Monell prohibits. See Monell, 436 U.S. at 691 ("[A] municipality cannot be held liable under [section] 1983 on a respondeat superior theory."); Estate of Jones v. City of Martinsburg, 961 F.3d 661, 672 (4th Cir. 2020) ("Monell liability cannot be predicated on a theory of respondeat superior"); [D.E. 17] 15–16. Thus, the court dismisses Myrick's section 1983 claim against the city defendants.

D.

Myrick requests a "declaratory judgment ruling N.C. Gen. Stat. § 14-277.3A unconstitutional on its face and as applied" to him under North Carolina Rule of Civil Procedure 57. Compl. ¶ 42. Myrick brings this claim against the city defendants under the Free Speech Clause of the First Amendment to the United States Constitution and Article I of the North Carolina Constitution. See id. at ¶¶ 40–45.

The Free Speech Clause of the First Amendment applies to the states through the Fourteenth Amendment and "prohibits laws abridging the freedom of speech." Free Speech Coal., Inc. v. Paxton, 606 U.S. 461, 470 (2025) (quotation omitted); see Stromberg v. California, 283 U.S. 359, 368 (1931); Fusaro v. Cogan, 930 F.3d 241, 248 (4th Cir. 2019); Snyder v. Phelps, 580 F.3d 206, 214 n.4 (4th Cir. 2009), aff'd, 562 U.S. 443 (2011). But the Free Speech Clause "does not confer an absolute right to speak." Gitlow v. New York, 268 U.S. 652, 666 (1925). The First Amendment "protects speech along a spectrum," meaning that speech laws "receive different levels of judicial scrutiny depending on the type of regulation and the justifications and purposes underlying it." Fusaro, 930 F.3d at 248; see Stuart v. Camnitz, 774 F.3d 238, 244 (4th Cir. 2014).

When a challenged law burdens protected speech, content-neutral restrictions are subject to intermediate scrutiny and content-based restrictions are subject to strict scrutiny. See Billups v. City of Charleston, 961 F.3d 673, 684–85 (4th Cir. 2020). A content-neutral law which merely

incidentally burdens protected speech is likewise subject to intermediate scrutiny and survives if it (1) "advances important governmental interests unrelated to the suppression of free speech" and (2) "does not burden substantially more speech than necessary to further those interests." Paxton, 606 U.S. at 495–96; see Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180, 189 (1997); Am. Entertainers, LLC v. City of Rocky Mount, 888 F.3d 707, 715 (4th Cir. 2018); Satellite Broad. & Commc'ns Ass'n v. FCC, 275 F.3d 337, 355 (4th Cir. 2001). Where the court determines that the government does not satisfy these elements, it is "unnecessary" for the court to "consider whether the [law] might be content-based and thus subject to strict scrutiny." Billups, 961 F.3d at 684.

Under the First Amendment, plaintiffs bear "the initial burden of proving that speech was restricted by the governmental action in question." Reynolds v. Middleton, 779 F.3d 222, 226 (4th Cir. 2015); see Hebb v. City of Asheville, 145 F.4th 421, 432 (4th Cir. 2025). If plaintiffs succeed in their "initial showing, the burden then falls on the government to prove the constitutionality of the speech restriction" under the appropriate level of scrutiny. Reynolds, 779 F.3d at 226; see Billups, 961 F.3d at 685; Doe, 842 F.3d at 846. Under intermediate scrutiny, the government must "present actual evidence supporting its assertion that a speech restriction does not burden substantially more speech than necessary." Reynolds, 779 F.3d at 229; see Billups, 961 F.3d at 685; Doe, 842 F.3d at 846; Bruni v. City of Pittsburgh, 824 F.3d 353, 371–72 (3d Cir. 2016); Ross v. Early, 746 F.3d 546, 556 (4th Cir. 2014). "[A]rgument unsupported by the evidence will not suffice to carry the government's burden." Reynolds, 779 F.3d at 229.

Myrick claims the N.C. Gen. Stat. section 14-277.3A is a "content-based restriction." Compl. ¶ 44. In State v. Shackelford, the North Carolina Court of Appeals held that section 14-277.3A(c)(2) was unconstitutional as applied to a defendant as a content-based restriction. See 264 N.C. App. 542, 558, 825 S.E.2d 689, 699–700 (2019). This ruling, however, was limited to a

social media context that required the court to consider the content of social media posts to determine if the posts would cause a reasonable person to suffer substantial emotional distress. See id. at 558, 825 S.E.2d at 699. Myrick's case is distinguishable. He does not plausibly allege that his statements led to his arrest. Rather, he was arrested pursuant to the warrant because he repeatedly followed Smith and attempted to talk to her. See Compl. ¶¶ 26–27; [D.E. 1-4] 2. Although Myrick states that he would say "hello" to his neighbor, he does plausibly allege that the content of his speech led to his arrest. Cf. Shackelford, 264 N.C. App. at 558, 825 S.E.2d at 699–700. Thus, as applied to Myrick, section 14-277.3A is not a content-based restriction.

Even if section 14-277.3A could incidentally chill Myrick's speech, the RPD officers arrested Myrick due to the arrest warrant arising from his course of conduct, not his speech. Indeed, Myrick's arrest warrant does not mention the content of his speech. See [D.E. 1-4] 2.

A "statute directed at conduct rather than speech" may pass constitutional muster. R.A.V. v. City of St. Paul, 505 U.S. 377, 389 (1992). Here, the RPD officer's application of section 14-277.3A was directed at Myrick's conduct. The August 1, 2021 arrest warrant was government action directed at Myrick's conduct and did not violate his First and Fourteenth Amendment free speech rights. Thus, the court dismisses Myrick's request for a declaratory judgment.

As for Myrick's claim under the North Carolina Constitution, direct claims under the North Carolina Constitution are permitted "only in the absence of an adequate state remedy." DeBaun v. Kuszaj, 238 N.C. App. 36, 37, 767 S.E.2d 353, 355 (2014) (cleaned up). A state tort or common law claim like malicious prosecution provides an adequate state remedy, even if subject to a public official immunity defense. See id. at 40–41, 767 S.E.2d at 356–57. Myrick has an adequate state remedy available in his malicious prosecution claim, and he cannot bring a direct claim under the

North Carolina Constitution. Thus, the court dismisses Myrick's direct cause of action under the North Carolina Constitution.

V.

In sum, the court GRANTS city defendants' motion to dismiss the complaint [D.E. 14] and DISMISSES WITHOUT PREJUDICE plaintiff's complaint [D.E. 1-2].

SO ORDERED. This 20 day of November, 2026.

JAMES C. DEVER III
United States District Judge